GEORGE W. SPENCER *et al.* Appellants, *vs.* TIMOTHY C. CLOHESEY *et al.* Appellees.

*Opinion filed December 17, 1907.*

1. PARENT AND CHILD—*when fruits of son's labor in hands of father are not subject to son's debts.* An adult son may work for his father for many years at an inadequate compensation in a business which brings the father large returns without thereby rendering the fruits of his labor in the hands of the father subject to the son's debts, provided there is no fraudulent arrangement designed to enable the son to evade payment of his debts.

2. SAME—*services actually rendered govern the question of adequacy of compensation.* In determining whether or not the compensation paid by a father to his son for the latter's services as foreman or manager of a printing establishment was adequate, the value of the services actually rendered, and not the reasonable value of the services of a man who could and would properly attend to the business, is the true test.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

On December 28, 1904, George W. Spencer filed a creditor's bill in the superior court of Cook county against Timothy C. Clohesey and others, appellees, praying for discovery and seeking to subject certain property in the hands of Timothy C. Clohesey, of which David T. Clohesey was alleged to be the equitable owner, to the payment of the debts of the latter. On the second day after the bill was filed David T. Clohesey filed a petition in bankruptcy

231—23

in the District Court of the United States for the Northern District of Illinois, and was on the following day adjudged a bankrupt by that court. Thereafter, on March 13, 1906, Joseph Grove, who was appointed trustee of the bankrupt estate, filed an intervening petition in said cause in said superior court. An answer was filed to the bill, and upon a hearing in open court a decree was entered against appellees. A writ of error was sued out by them from the Appellate Court for the First District, where the cause was assigned to the branch court. From the judgment of that court reversing the decree and remanding the cause, with directions to dismiss the bill and petition for want of equity, Spencer and Grove have prosecuted this appeal.

The bill, as amended, alleges that the complainant, on May 12, 1904, recovered a judgment in the superior court of Cook county against David T. Clohesey and George H. Wallace for the sum of $1226.25 and costs of suit, and that on the following day he caused an execution to be issued upon said judgment and placed in the hands of the sheriff of Cook county, Illinois, for service; that on August 11, 1904, the sheriff returned the same no property found and no part satisfied; that there is now due complainant on said judgment the sum of $1247.75, with interest thereon from December 17, 1896. This debt was originally evidenced by a promissory note dated in January, 1886.

The bill further alleges that on or about January 15, 1886, David T. Clohesey and one George H. Wallace were conducting a printing establishment at No. 166 South Clark street, Chicago, and that on July 10, 1886, David T. Clohesey purchased from Wallace his interest in said business for the sum of $2000, and has since conducted and carried on said business to the present time under the name of Clohesey & Co.; that on or about June 1, 1886, prior to the time of said purchase, Timothy C. Clohesey, the father of David T., advanced about $1500 to the son to pay off certain notes secured by chattel mortgages against said printing

establishment, and that he now claims and pretends to be the owner of said business and to have been since said money was advanced; that in June, 1886, and for a long time thereafter, said Timothy C. Clohesey was employed by the city of Chicago as a foreman in the sewer department; that he had no knowledge whatever of the printing business and has never devoted any time or attention to said business; that David T. Clohesey is a practical printer and has a thorough knowledge of said business, and that prior to the time of said purchase from Wallace he had been earning from $18 to $20 per week as foreman in a press-room; that since his said purchase from Wallace he has carried on said business under the name of Clohesey & Co. and has had the complete management of the same, to which he has devoted his entire time and attention; that the assets of said business are now worth over $20,000, and that the reasonable value of such services from July, 1886, to the present time is $50 per week; that during that time he has drawn from said business between $5 and $10 a week and the balance of his earnings has remained in said business, and that no agreement was ever made between him and Timothy C. Clohesey in reference to his compensation for conducting and managing the said business; that David T. Clohesey is the owner of said printing business carried on under the name of Clohesey & Co., and that the pretended transfer to Timothy C. Clohesey was for the purpose of hindering and defrauding complainant and others in the collection of their claims against David T. Clohesey; that said chattel mortgages against said property were never foreclosed and that said property was never legally purchased by said Timothy C. Clohesey, and that all of said property, and certain other real estate standing in the name of Timothy C. Clohesey and his wife, alleged to have been purchased with the funds of David T. Clohesey, is subject to the claims of complainant and the other creditors of David T. Clohesey.

The allegations of the intervening petition and the bill are substantially the same.

Timothy C. Clohesey, his wife, and David T. Clohesey, the defendants to the bill, by their joint and several answer averred that Timothy C. Clohesey is the owner of said printing establishment, and has been since July, 1886; that prior to said date there existed certain chattel mortgages given to secure notes amounting to more than $2000, which were valid liens upon said printing establishment, and that said Timothy C. Clohesey purchased said notes and mortgages entirely with his own money and caused the same to be foreclosed, and upon a sale under such foreclosure proceedings he purchased said printing establishment and took possession of the same, and has since been the absolute owner thereof and carried on said business with his own funds; that there was no agreement or understanding of any kind that David T. Clohesey had, or should have at any time, any interest in said business; that said Timothy C. Clohesey purchased said property for the purpose of engaging in the printing business and furnishing employment for his children; that he placed his daughter, Catherine Clohesey, in charge of said business as bookkeeper and cashier and gave her absolute control over the financial affairs of said business, and that he also had David T. Clohesey and another son, Timothy J. Clohesey, work for him in said establishment; that he has conducted said business with the aid and co-operation of his children, and that, while he is not a practical printer, he has advised them in regard to the management and policy of said business; that the increase of said business has not been due to the efforts of David T. Clohesey, but solely to the careful management of Catherine Clohesey and supervision of Timothy C. Clohesey; that all of said children reside with Timothy C. Clohesey, and he has paid to each of them the sum of $10 per week and has given them their board and clothing, and that he has drawn from said business the sum

of $35 per week for the support of his family and has used
other large sums in his personal affairs, and that none of
his children have any interest in said business; that said
printing plant as covered by said chattel mortgages was de-
stroyed by fire many years ago, and that the present plant
is entirely a new plant, purchased solely with the money of
Timothy C. Clohesey, earned by him in real estate invest-
ments and as foreman in the sewer department of the city
of Chicago; admits that David T. Clohesey is a practical
printer and has a thorough knowledge of said business, and
denies the other material allegations of the bill.

Replications were filed to the answers, and upon a hear-
ing the court entered a decree finding that said printing es-
tablishment belonged to David T. Clohesey and was subject
to the rights and claims of his creditors, and to the rights
of Joseph Grove, as his trustee in bankruptcy. The de-
cree requires payment by the defendants of the claims al-
lowed in bankruptcy, including the debt of Spencer, and
if default is made, a receiver is to take possession of the
printing establishment to obtain satisfaction of the decree.

It appears from the evidence that at the time of the
alleged sale of said printing establishment to Timothy C.
Clohesey, the son David was a practical printer, about
twenty-three years of age, and for about one year prior to
that time he and one George Wallace had been conduct-
ing the business under the name of Wallace & Clohesey.
Earlier, these two and appellant Spencer had composed a
firm owning the establishment. After Timothy C. Clohesey
had assumed control of the plant he placed his daughter,
Catherine, a girl then fourteen or fifteen years of age, in
the office as cashier and book-keeper, and David, the son,
otherwise had actual charge of the business as an employee
of his father. Another son, Timothy J., entered the office
about the same time and learned the printing business.
These two sons and this daughter have remained in the
father's employ since that time, except that Timothy J.

ceased to work in the establishment a short time prior to the beginning of the suit. Other children of Timothy C. have been employed in the business at different times, and each so employed, including David, has drawn from $5 to $10 per week from the business and has been given board and clothing by the father. Appellants offered evidence tending to show that the services of the manager of a printing plant such as the Clohesey plant is at this time, are worth from $40 to $50 per week. The plant originally purchased by Timothy C. Clohesey was some years ago destroyed by fire, and the business is now being conducted on Fifth avenue, in the city of Chicago. Twelve men are employed in the business and the establishment is worth about $10,000.

It is urged by appellants that the Appellate Court erred in reversing the decree of the superior court of Cook county.

HARRY A. BIOSSAT, (ATWOOD, PEASE & LOUCKS, of counsel,) for appellants.

EDMUND S. CUMMINGS, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The Appellate Court in this case stated that there was no conflict in the evidence, and concluded that the proof was not sufficient to sustain the decree. Appellants insist that the evidence was conflicting, and as the chancellor had opportunity to see and hear the witnesses, the ordinary rule respecting his findings of fact should be applied.

There can be no question that in 1886 the father with his own funds purchased notes secured by chattel mortgages on the printing establishment; that the father foreclosed the mortgages and purchased the property at the sale; that the business was thereafter conducted by employees of the father; that the proceeds of this business

went into a bank account owned and controlled by him and kept in the name of Clohesey & Co.; that the entire plant was destroyed by fire about ten years before the trial of this case in the superior court and was replaced by the father. Up to the time of the trial he enjoyed the profits arising from the business and was apparently the sole owner thereof. He and his son David, the only persons who had actual personal knowledge on the subject, both testify that he was the owner of the establishment, and that the son David had no interest of any character, as owner, in the plant or the business there conducted. None except the father and the daughter, Catherine, drew checks upon the bank account, and into that account went not only the proceeds of this business, but the father's salary and rents from real estate owned by him.

The first alleged conflict in the evidence pointed out in the brief of the appellants is between David, the son, and Frank J. Kain on the part of appellants and Catherine on the part of appellees. It is said that the two former testified that David was the manager of the business, while Catherine testified that she was the manager of the business. The statement that any particular person was the manager of the business is the statement of a legal conclusion. When we examine the testimony of these witnesses there is no real conflict. What Catherine in fact said as to being manager was: "I was the manager, as well as my two brothers; I look after the financial end of it." She was the cashier and book-keeper. When David was present he employed the help, bought the stock and fixed the price of the work that was done in the shop. He did not give his attention steadily to the business, however, and was absent several weeks at a time, several times each year. He says on account of ill-health; his sister says on account of his drinking habits. When he was absent the duties above indicated which were performed by him when he was present were attended to either by Catherine or by Timothy J.

Clohesey, another son of Timothy C., who worked in the establishment many years.

It is urged that there is a conflict in the evidence in reference to the time when Catherine was first employed as book-keeper and cashier. David testified that she came there a year or so after the mortgage was foreclosed. In the foreclosure proceeding the father was represented by Daniel F. Flannery, a member of the Cook county bar, who took the necessary measures to effect a sale. Mr. Flannery testified in this case that at the time the father acquired the property at the foreclosure sale he advised his client to bring his daughter there and make her cashier and book-keeper, so that he would get the benefit of the business; that the father did so, and that the daughter was brought there at that time. Mr. Flannery says: "The girl was there when I was there; I got her there." The father and the daughter both testified that she came there immediately after the foreclosure, and that upon Mr. Flannery's advice she and her father went to the bank together and there made arrangements by which checks signed by her and drawn upon the account of Clohesey & Co. should be honored. At the time of the foreclosure the establishment was closed for a time, how long does not appear, except that it was for a greater length of time than one day. We are satisfied that when it was re-opened the daughter was there for the purpose of keeping the accounts and handling the cash for her father.

Appellants insist that the circumstances show that the testimony to the effect that the father was the sole owner of the establishment and of the profits arising from the business is untrue. We think there are two circumstances, only, which, unexplained, afford basis for that contention. First, the daughter, Catherine, at the time of the foreclosure was but fourteen or fifteen years of age and was taken from school to go into this business. It is manifest that she could then have had no knowledge of the printing business

that would have enabled her to conduct or manage the establishment. She could not have fixed the price for job work, employed printers or bought stock with discretion. We think it entirely clear, however, that she was placed in this business, by Mr. Flannery's direction, as cashier and book-keeper. At that time the affairs of the establishment were not complicated. But four printers were then employed, and in a small business of that kind an intelligent girl of that age would very likely be able to keep account of cash received and paid out, so that her father's interest would be protected and he could be assured that he was receiving all the money arising from the business.

The second of the circumstances to which we have just referred is found in the fact that David, the son, for about twenty years after the foreclosure of the mortgage worked in this establishment, and received therefor, according to appellees, his living,—that is, his board and clothes and but a few dollars per week,—which, according to the testimony of appellants' witnesses, is much less than his services were actually worth. At the time the mortgage was foreclosed, however, he was but twenty-three years of age. The father had originally advanced or given to him $1000 with which to engage in the printing business at the time he formed the partnership with Spencer and Wallace, and this money was lost. The father had a large family of children, all of whom seem to have been younger than David. Several of these younger children worked at the business from time to time,—some of them for many years. The daughter, Catherine, was there during all the time after the foreclosure of the mortgages, and the son Timothy J. was there for a period of about eighteen years. Other children worked there for shorter periods. The son David has never married and has always lived in his father's home.

The great preponderance of the evidence shows that during the time the children of Timothy C. Clohesey worked in this establishment they were treated alike. Each re-

ceived his or her board and clothing and a small sum per week. David was in the same category as the others. Of course, in the beginning he did not stand on the same basis as the others by reason of his greater skill and ability, but as the others acquired knowledge of the business their deserts became more nearly equal; and his irregular habits, whether resulting from ill-health or dissipation, must also be taken into consideration in determining whether or not the testimony of the father and son is so unreasonable that a court would be justified in saying that the testimony of each was untrue. We do not think the circumstances relied upon by the appellants, as they are explained by proof found in this record, sufficient to outweigh the evidence in favor of appellees.

Appellants say that the question at issue here is whether David could work for his father, without adequate compensation, for twenty years, in a business which brought the father large returns, without subjecting the fruit of David's labors in the father's hands to the payment of the son's debts. As a legal proposition he could do so if the condition of affairs was not the result of a fraudulent arrangement designed to enable David to evade the payment of his debts, and the evidence does not sustain a charge of fraud in this regard. Moreover, the value of the services of a man who would properly manage this establishment is one thing; the value of the services actually rendered by David is another. When the course pursued by him in abandoning his employment from time to time is considered, together with the other facts and circumstances shown by the proof, it is doubtful whether his compensation was inadequate.

It is unnecessary to determine whether *laches* constitutes a defense in this action.

The judgment of the Branch Appellate Court will be affirmed.

*Judgment affirmed.*